UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VANESSA PRADA, KRISTY
LOCKWOOD, DEMETRIC GREEN
and JIMMY WALKER,

    Plaintiffs,

v.                                         Case No: 2:16-cv-850-FtM-99CM

DCS ENTERPRISES, INC., DAVID
STEWART and SUE STEWART,

    Defendants.

## ORDER

This matter comes before the Court upon review of the Unopposed Motion by Plaintiffs Kristy Lockwood and Demetric Green for Approval of Settlements and Dismissal of Their Claims *with Prejudice* and Incorporated Memorandum of Law (the "instant motion") filed on June 21, 2017. Doc. 47. Mr. Green has not provided a copy of a written settlement agreement for the Court's review. Ms. Lockwood has provided a copy of a written settlement agreement for the Court's review. Doc. 41-1. Mr. Green and Ms. Lockwood request that the Court approve the settlement of their Fair Labor Standards Act ("FLSA") claims and dismiss their claims with prejudice. Doc. 47.

The remaining Plaintiffs, Jimmy Walker and Vanessa Prada,[1] have settled directly with Defendants. Doc. 30. In response to a Court Order,[2] Mr. Walker filed a notice of settlement on May 10, 2017 containing the terms of an oral settlement with Defendants (Doc. 34), and Defendants filed their written settlement agreement with Ms. Prada on May 11, 2017. Doc. 35-1. These documents are not accompanied by a motion to approve the settlements required by the Court's scheduling order.[3] The Court, however, will review these settlements and scrutinize them for fairness.

## I. Legal Standard and Common Allegations

To approve a FLSA settlement, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). There are two ways for a claim under the FLSA to be settled or compromised. *Id.* at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id.* at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Id.* When

---

[1] All Plaintiffs were represented by Bober & Bober, P.A. at the beginning of this action. The Court granted Bober & Bober, P.A.'s motions to withdraw from representing Ms. Prada on March 28, 2017 and Mr. Walker on April 20, 2017. Doc. 20, 29. Mr. Green and Ms. Lockwood remain represented by Bober & Bober, P.A. while Ms. Prada and Mr. Walker proceeded *pro se*.

[2] The April 26, 2017 Order required the parties to provide the Court with settlement documents including a brief description of the terms of the settlement, the number of hours and lost wages originally claimed by Plaintiffs Walker and Prada, and whether or not the Plaintiffs' claims were settled by compromise. Doc. 31.

[3] The January 25, 2017 scheduling order states, "Should the parties settle the dispute at any later time, they shall immediately advise the Court as required by Local Rule 3.08(a) and promptly submit a joint motion to approve settlement." Doc. 14 ¶ 10.

the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54.

The Eleventh Circuit found settlements to be permissible when the lawsuit is brought by employees under the FLSA for back wages because the lawsuit

> provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

In determining whether the settlement is fair and reasonable, the Court may consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See, e.g.*, *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Dorismond v. Wyndham Vacation Ownership, Inc.*, No. 6:14–cv–63–Orl–28GJK, 2014 WL 2861483 (M.D. Fla. June 24, 2014).

On November 28, 2016, Ms. Prada, Ms. Lockwood, Mr. Walker, and Mr. Green, filed a Complaint against Defendants, DCS Enterprises, Inc. ("DCS"), doing business

as Charley's Steakery, and David Stewart and Sue Stewart individually (collectively, "Defendants"), alleging violations of the FLSA. Doc. 1 ¶¶ 28-46. Specifically, Mr. Walker sought relief for both unpaid overtime and minimum wages. Doc. 1 ¶¶ 28-46. Ms. Prada, Ms. Lockwood, and Mr. Green sought relief solely for unpaid overtime. *Id.* ¶¶ 28-36. The Court will address each Plaintiff's specific allegations separately when analyzing each of their individual settlements.

## II. Analysis

### a. *Ms. Lockwood's Settlement*

The Complaint alleges that Defendants employed Ms. Lockwood from on or about January 5, 2015 to August 29, 2016 as a "grill person" and cashier. *Id.* ¶ 19. Ms. Lockwood's hourly rate was $8.50. *Id.* ¶ 20. Ms. Lockwood alleges that, during her employment, she worked hours in excess of forty (40) per week for which she was not compensated at the statutory rate of time and one-half. *Id.* ¶ 30. On March 7, 2017, Ms. Lockwood filed answers to the Court's interrogatories, in which she estimated Defendants owed her $8,719.00 in unpaid overtime wages. Doc. 17-1 at 2.

Ms. Lockwood has settled her claims with Defendants and provided the Court with her Settlement Agreement and General Release. Doc. 41-1. Pursuant to the settlement agreement, Defendants agree to pay Ms. Lockwood $3,000.00 "in full and final settlement and resolution of all claims Plaintiff has, had, or may have against" Defendants. *Id.* at 1. In the instant motion, Ms. Lockwood urges the Court to

approve the settlement as a fair and reasonable compromise of a bona fide dispute. Doc. 47.

Ms. Lockwood outlines several factual disputes that make the settlement attractive to her. *Id.* at 5-7. First, the corporate Defendant denies that it is a "covered enterprise" or that it meets the $500,000.00 threshold for being covered by the FLSA. *Id.* at 6. Second, the parties dispute whether Ms. Lockwood's payroll records are accurate and whether they reflect the actual amounts received by her. *Id.* Third, the parties dispute whether the individual Defendants meet the FSLA's definition of "employer" and would be subject to personal liability. *Id.* Fourth, the parties dispute whether Defendants acted in "good faith" for the purpose of imposing liquidated damages. *Id.* Accordingly, Ms. Lockwood contends that continued litigation would force her to engage in significant discovery, motion practice and a costly trial. *Id.* at 7. All the while, her probability of success is uncertain. *Id.* at 8. Moreover, DCS's business operations may be in jeopardy, making settlement for Ms. Lockwood at this time ever more attractive, particularly when, as here, liability against the individual Defendants is not guaranteed. *Id.* at 6-7.

Ms. Lockwood represents that there has been sufficient exchange of information—including work schedules, hours, and pay—between her and Defendants to enable her to make an informed decision regarding settlement. *Id.* at 8. The instant motion states that above all Ms. Lockwood "simply want[s] the litigation to be over and done with" and that the settlement money is coming at a good time for her, personally. *Id.* at 3.

Based on the parties' representations and the policy in this circuit of promoting settlement of litigation, the Court would be inclined to find the monetary terms of the proposed settlement to be a fair and reasonable compromise of the dispute. Other courts in this district similarly have approved settlements for a compromised amount in light of the strength of the defenses, the complexity of the case, and the expense and length of continued litigation. *See e.g.*, *Diaz v. Mattress One, Inc.*, No. 6:10–cv–1302–Orl–22DAB, 2011 WL 3167248 (M.D. Fla. July 15, 2011); *see also Dorismond*, 2014 WL 2861483. Here, however, Ms. Lockwood's settlement agreement contains several non-monetary provisions that render it unfair and unreasonable.

First, the settlement agreement includes a general release of claims and a non-disparagement clause. Doc. 41-1 ¶¶ C, E. In FLSA cases, general releases are typically disfavored because "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1352 (M.D. Fla. 2010) (holding that the proposed FLSA settlement agreement was unfair and precludes evaluation of the compromise because of the pervasive and unbounded scope of the release). Additionally, "[p]rovisions in a FLSA settlement agreement that call for keeping the terms of the settlement confidential or prohibiting disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-CV-461-J-15TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013).

Other courts within this district have approved general releases in FLSA cases when the plaintiff receives compensation that is separate and apart from the benefits to which plaintiff is entitled under the FLSA. *Weldon v. Backwoods Steakhouse, Inc.*, 6:14–cv–79–Orl–37TBS, 2014 WL 4385593, at *4 (M.D. Fla. Sept. 4, 2014); *Buntin v. Square Foot Management Company, LLC*, 6:14–cv–1394–Orl–37GJK, 2015 WL 3407866, at *2 (M.D. Fla. May 27, 2015); *Raynon v. RHA/Fern Park MR., Inc.*, 6:14–cv–1112–Orl–37TBS, 2014 WL 5454395, at *3 (M.D. Fla. Oct. 27, 2014). In *Weldon*, the court approved a settlement agreement that contained a general release and non-disparagement agreement because they were supported by independent consideration, in addition to the sum the plaintiff would receive from the FLSA settlement. *Weldon*, 2014 WL 4385593, at *4. Here, the agreement is silent whether Ms. Lockwood received any independent or additional consideration in exchange for the general release. Moreover, "[a]bsent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate." *Moreno*, 729 F. Supp. 2d at 1352.

Apart from the general release and non-disparagement clause, the Court notes that further pervasive releases outside of the FLSA claim are contained elsewhere in the settlement agreement. The agreement states that "Plaintiff will indemnify, defend, and hold harmless [Defendants] from any and all damages, claims, liens, known or unknown, including but limited to any attorney's fees sought by such entities." Doc. 41-1 ¶ B. The settlement agreement contains affirmations that "Plaintiff will cause to be dismissed with prejudice each and every claim, complaint,

action or charge of discrimination, with any agency . . . against [Defendants]" and Plaintiff "will not voluntarily assist in the investigation or litigation of any claims, charges, or controversies brought by any person or entity against [Defendants]." *Id.* ¶ D. The settlement agreement concludes with the acknowledgement that "Plaintiff freely and knowingly . . . enters into this agreement and general release intending to waive, settle and release all claims she has or might have against [Defendants]." *Id.* at 5.

Defendants, however, are "not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA" because "a pervasive release in an FLSA settlement introduces a troubling imponderable into the calculus of fairness and full compensation." *Moreno*, 729 F. Supp. 2d at 1351. Here, although the agreement contains a severability provision, it specifically states, "[i]f the Release is deemed unenforceable . . . , the entire Agreement will be null and void." *Id.* Under these circumstances, the Court cannot approve the settlement agreement as fair and reasonable.

### b. *Mr. Green's Settlement*

The Complaint alleges that Defendants employed Mr. Green as an assistant manager and "crew leader" from January 2014 to November 4, 2016 at an hourly rate of $9.50. Doc. 1 ¶¶ 21-22. Mr. Green alleges that, during his employment, he worked hours in excess of forty (40) per week for which he was not compensated at the statutory rate of time and one-half. *Id.* ¶ 30. On March 7, 2017, Mr. Green filed answers to the Court's interrogatories, in which he estimated Defendants owe him

$14,632.59[4] in unpaid overtime wages. Doc. 17-2 at 2.

Mr. Green has not provided a copy of a settlement agreement for the Court's review. Doc. 47 at 2. The instant motion states:

> There is no written settlement agreement between Mr. Green and the Defendants. Instead, the Defendants simply made an offer to him *via* email to undersigned counsel on June 12, 2017, to settle for that amount, and Mr. Green agreed to accept it. On June 13, 2017, *via* email, undersigned counsel advised defense counsel that Plaintiff, Green, accepted the $3,000.00 offer.

*Id.* The motion clarifies that "[t]here are no other terms of settlement" between Mr. Green and Defendants. *Id.* n.2. Indeed, Mr. Green's Notice of Settlement states that "[Mr.] Green has simply agreed to accept the aforesaid monetary settlement to be done with this case, and dismiss his case with prejudice." Doc 43 n.1. The instant motion invites the Court to approve Mr. Green's settlement for the same reasons it asks the Court to approve Ms. Lockwood's settlement.

The Court notes that Mr. Green is represented by counsel "who can protect [his] rights under the statute." *Lynn's Food Stores, Inc.* 679 F.2d at 1354; Doc. 47 at 7. Based on the language of the motion itself, and the policy in this circuit of promoting settlement of litigation, the Court would be inclined to find the monetary terms of the proposed settlement to be a fair and reasonable compromise of the dispute. Defendants' alleged email settlement offer and Mr. Green's acceptance has not been provided for the Court's review. *Id.* at 2-3. Reviewing the agreement "without the agreement's appearing in the record (in any event precluding other

---

[4] $13,492.59 from January 6, 2014 to December 19, 2015, and an additional $1,140.00 from August 15, 2016 to October 29, 2016. *Id.*

employees' and the public's access to, and knowledge of, the agreement) thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1245 (M.D. Fla. 2010).

Specifically, here, the Court is unable to confirm the scope of the release Mr. Green has given the Defendants. By way of example, the instant motion states that Ms. Lockwood agrees to "settle her overtime wage claim." Doc. 47 at 2. As discussed above, however, the provisions of Ms. Lockwood's settlement agreement encompass a much broader release of claims than the narrow language contained in the instant motion. Accordingly, because the instant motion contains the similar language regarding Mr. Green's settlement, the Court is unable to discern whether his settlement is limited to only Mr. Green's current FLSA claim. *Id.* Thus, in order to determine whether Mr. Green's settlement is fair and reasonable, the Court requires the parties' agreement to appear in the record.

### c. *Ms. Prada's Settlement*

The Complaint alleges that Defendants employed Ms. Prada as a manager from October, 2014 to August 29, 2016 at an hourly rate of $11.00. Doc. 1 ¶¶ 17-18. Ms. Prada alleges that, during her employment, she worked hours in excess of forty (40) per week for which she was not compensated at the statutory rate of time and one-half. *Id.* ¶ 30. *Id.* ¶¶ 29-30. On March 8, 2017, Ms. Prada filed answers to

the Court's interrogatories, in which she estimated Defendants owed her $30,404.00[5] in unpaid overtime. Doc. 19-1.

Defendants provided the Court with a Settlement Agreement and General Release entered between them and Ms. Prada. Doc. 35. Ms. Prada's settlement agreement and general release is identical to Ms. Lockwood's agreement with Defendants. Doc. 35-1, 41-1. Ms. Prada's agreement includes a general release of claims and a non-disparagement clause, but is silent whether Ms. Prada received any independent or additional consideration in exchange for these provisions. Doc. 35-1 ¶¶ C, E.

Again, similarly to Ms. Lockwood's agreement, apart from the general release and non-disparagement clause, pervasive releases outside of the FLSA claim are contained elsewhere in the settlement agreement. The agreement states that "Plaintiff will indemnify, defend, and hold harmless [Defendants] from any and all damages, claims, liens, known or unknown, including but limited to any attorney's fees sought by such entities." Doc. 35-1 ¶ B. The settlement agreement contains affirmations that "Plaintiff will cause to be dismissed with prejudice each and every claim, complaint, action or charge of discrimination, with any agency . . . against [Defendants]" and Plaintiff "will not voluntarily assist in the investigation or litigation of any claims, charges, or controversies brought by any person or entity against [Defendants]." *Id.* ¶ D. The settlement agreement concludes with the acknowledgement that "Plaintiff freely and knowingly . . . enters into this agreement

---

5 $3,300.00 during 20 weeks and an additional $27,104.00 during 112 weeks. Doc. 19-1 at 2.

and general release intending to waive, settle and release all claims she has or might have against [Defendants]." *Id.* at 5. Here, although the agreement likewise contains a severability provision, "[i]f the Release is deemed unenforceable . . . , the entire Agreement will be null and void." *Id.* For the reasons explained in the analysis of Ms. Lockwood's settlement, above, the Court is unable to find Ms. Prada's agreement to be fair and reasonable.

### d. Mr. Walker's Settlement

The Complaint alleges that Defendants employed Mr. Walker as a cook and cashier from October 2013 to January 2016 at an hourly rate of $8.50. Doc. 1 ¶ 23. In May 2016, Mr. Walker was promoted to a salaried supervisor and received a weekly salary of $460.00. *Id.* On or about June 2016, Mr. Walker received another promotion, to store manager, and his weekly salary increased to $600.00. *Id.* His employment terminated on October 31, 2016. *Id.* Mr. Walker alleges that, during his employment, he worked hours in excess of forty (40) per week for which he was not compensated at the statutory rate of time and one-half. *Id.* ¶ 29-30. He further alleges that Defendants willfully paid him below both the federal and state statutory minimum wage. *Id.* ¶¶ 37-46. On March 7, 2017, Mr. Walker filed answers to the Court's interrogatories, in which he estimated Defendants owed him $9166.00[6] in unpaid overtime. Doc. 17-3 at 2.

---

[6] $3,179.00 from April 25, 2014 to May 30, 2015; $1,955.00 from June 1, 2015 to May 14, 2016; $4,032.00 from May 15, 2016 to October 31, 2016. *Id.*

Mr. Walker has filed a notice of settlement to the Court. Doc. 34. No settlement agreement, however, has been provided for the Court's review. As discussed above, parties in FLSA cases may not stipulate to the dismissal of their claims without judicial approval. *Dees*, 706 F. Supp. 2d at 1246-47 ("If presented in an FLSA action with a . . . stipulation for dismissal . . . or the like, the judicial approval required by *Lynn's Food* and the public's right of access to a judicial proceeding compel the parties to file their agreement in the public docket of the district court.") (citing *Lynn's Food Store, Inc.*, 679 F.2d at 1352). The Court must determine whether the parties' settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Stores Inc.,* 679 F.2d at 1355.

Mr. Walker's notice of settlement states that on March 15, 2017, while he was represented by counsel, Defendant Mr. Stewart contacted Mr. Walker via phone and Mr. Walker agreed to accept $2,000.00 in exchange for him no longer pursuing "any further action" against Defendants Mr. and Ms. Stewart. *Id.* The amount did not include any court costs or attorney's fees but "if any apply to this case [Mr. Walker] will cover the cost of these fee [sic] if any apply in this matter." *Id.* Mr. Walker states that two days later, he terminated his counsel and met with Mr. Stewart to receive the $2,000.00. *Id.* At this time, Mr. Walker provided Mr. Stewart a copy of the termination letter to Mr. Walker's attorney. *Id.*

Mr. Stewart has provided an affidavit to the Court stating:

I negotiated directly with Walker, Prada, and Lockwood separately and we came to a compromise in each claim. I did not include any attorney's

> fees in the amounts I paid to Walker, Prada and Lockwood as each of them advised me they were no longer represented by an attorney at the time we came to a compromise and settlement.

Doc. 41-2. As this Court never approved a motion for Ms. Lockwood's attorney to withdraw from representation, it is certain that at least the statement that Ms. Lockwood was no longer represented by an attorney is not true. Moreover, Mr. Walker certainly was still represented by counsel at the time Mr. Stewart contacted him. The Court finds these circumstances problematic.

In *Lynn's Food Stores Inc.*, the Eleventh Circuit expressed that FLSA settlements may be permissible after the initiation of a lawsuit because "[t]he employees are likely to be represented by an attorney who can protect their rights under the statute." 679 F.2d at 1354. In that circumstance, the court reasoned that "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* Here, however, the Court shares the Eleventh Circuit's concern about the need to avoid an employer's overreaching against an unrepresented employee. Both Mr. Stewart and Mr. Walker were represented by counsel at the time they reached their agreement. Yet, instead of negotiating through counsel, Mr. Stewart directly contacted Mr. Walker to reach a settlement without Mr. Walker having the benefit of his counsel's advice. Even more problematic, neither Mr. Walker or Defendants have filed a copy of a written settlement agreement for the Court's review. Absent an actual settlement agreement, the Court is unable to

scrutinize Mr. Walker's settlement agreement to determine its fairness and reasonableness.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Joint Motion to Approve Settlement and Dismiss with Prejudice (Doc. 47) is **DENIED without prejudice**.

2. All parties shall have **up to and including August 21, 2017** to file individual Settlement Agreements or other relevant documents memorializing the settlements, with the offending provisions removed and clarifications consistent with this Order. Any such settlement agreements shall be in writing, signed by all parties involved.

3. On May 30, 2017, the Court issued an Order to show cause against *pro se* Plaintiffs Vanessa Prada and Jimmy Walker and Defendants DCS Enterprises, Inc., David Stewart, and Sue Stewart for their failure to fully comply with the Court's Order dated April 26, 2017 (Doc. 31) that required them to provide the Court with settlement documents. Doc. 40. Because the parties have attempted to comply, the Court will take no further action on its Order to show cause at this time.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of August 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record